1

2

**FARID GHALEHTAK**
**SHIRIN TABATABAI**
1826 Leimert Blvd.
Oakland, CA 94602
Tel: (916) 215-5497
Fax: (909) 899-3881
Email: Shirint2003@yahoo.com

PLAINTIFF IN PRO SE

**FILED**

OCT 1 8 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**CV 17    5976 EMC**

FARID GHALEHTAK AND SHIRIN
TABATABAI

           Plaintiff,

v.

FAY SERVICING, LLC; MTC
FINANCIAL INC. dba TRUSTEE CORPS
and DOES 1-10, Inclusive

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

COMPLAINT FOR:

1. VIOLATION OF 15 U.S.C. §1692f(6)
2. VIOLATION OF 15 U.S.C. §1692, ET
   SEQ.
3. VIOLATION OF CIVIL CODE
   §2923.5
4. VIOLATION OF CIVIL CODES §§
   2924.17, 2924a(6)
5. VIOLATION OF CALIFORNIA
   CIVIL CODE §2934a(a)(1)(A)(C)
6. NEGLIGENT REPRESENTATION
7. VIOLATION OF UNFAIR
   BUSINESS PRACTICES UNDER
   B&P CODE §17200, ET. SEQ.

COMES NOW Plaintiffs FARID GHALEHTEK and SHIRIN TABATABAI

("Plaintiff" or "GHALEHTAK"), files this Complaint, against Defendants FAY

SERVICING, LLC, hereinafter referred to as FAY, in its capacity as purported mortgage

1

COMPLAINT

servicer of Plaintiffs' debt obligation and debt collector as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)*; and MTC FINANCIAL, INC. dba TRUSTEE CORPS, hereinafter referred to as TC, in its capacity as purported foreclosing trustee and debt collector as defined by the FDCPA, *15 U.S.C. §1692a(6)*, "collectively" Defendants, complains, pleads and alleges as follows:

## I.   STATEMENT OF JURISDICTION

This Court has original jurisdiction over the claims in this action based on *28 U.S.C. §§1331, 1332, 1343, 15 U.S.C. §§1692f(6), 1692 , et seq.* and *42 U.S.C. §1983* which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

This Court has original jurisdiction over the claims in the action based on *28 U.S.C. §1332* which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

This Court also has supplemental jurisdiction over the pendant state law claims because they form a party of the same case or controversy under Article III of the United States Constitution, pursuant to *28 U.S.C. §1367*.

The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Northern District of California and involved real

---

[1] The Ninth Circuit instructs that in actions brought under *28 U.S.C. § 2201*, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to 1) avoid needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-0319, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

property located in the Northern District of California.  Therefore, venue properly lies in this District, pursuant to *28 U.S.C. §1391(b).*

## II.   **SUBJECT REAL PROPERTY AT ISSUE**

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order of Declaratory Relief thereto.  The "Subject Property" address and legal description is as follows:  1826 Leimert Blvd., Oakland, CA 94602.  More particularly, the legal description of this property is:

LOT 3, BLOCK 12, MAP OF OAKMORE HIGHLANDS, FILED OCTOBER 14, 1926, IN MAP BOOK 10, PAGE 88, ALAMEDA COUNTY RECORDS.

Assessor's Parcel Number:  029A-1340-008.

## III.   **IDENTITY OF PARTIES**

Plaintiffs are informed and believes, and thereon alleges, that at all times relevant hereto Defendant, FAY SERVICING, LLC ("FAY"), is a Delaware LLC licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.  FAY is a mortgage servicing entity whose primary business is collecting debts owed or due another and is attempting to enforce a security interest.

Plaintiffs are informed and believes, and thereon alleges, that at all times relevant hereto Defendant, MTC FINANCIAL INC. dba TRUSTEE CORPS ("TC"), is a

registered California Corporation licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.  TC, as the "foreclosing trustee" is in the primary business of conducting non-judicial foreclosure proceedings to enforce a security interest, and attempts to collect debts owed or due another.

Plaintiffs are unaware of the true names and capacities of any individuals and/or entities sued herein under the fictitious names DOES 1 to 10, inclusive or, to the extent that the names of such individuals or entities may become known to Plaintiffs, and as such Plaintiffs cannot state with any certainty that such a Cause of Action lies herein as against such individuals or entities, or Plaintiffs are unable to allege the elements of such Cause of Action, at this time, and as such said Defendants are herein named in accordance with the provisions of (*Cal Code of Civil Procedure Sec. 474*).  Plaintiffs thereon reserves the right to amend instant Complaint to allege the true names and capacities of such fictitiously named Defendants when the same become known or when it has been ascertained with reasonable certainty that such Cause of Action hereunder can be satisfactorily stated and maintained as against each such fictitiously named individual or entity.

Plaintiffs are informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that

some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

Wherever reference is made in this Complaint to any act of any Defendants, that allegation shall mean that each Defendants acted individually and jointly with the other Defendants.

Any allegation about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

At all relevant times, each Defendant committed the acts, caused or directed to others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

At all relevant times, Defendants knew or realized that the other Defendants (successors and/or assigns) were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendants nevertheless facilitated the commission of those unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

At all times mentioned in this Complaint, Plaintiffs, FARID GHALEHTAK and

COMPLAINT

SHIRIN TABATABAI, are individual consumers residing in the County of Alameda and are the owners of the certain Subject Property.

This is a federal judicial issue and the Consumer is authorized by the Constitution for the United States of America, codified in the FDCPA, to enforce the laws of the United States and to protect and defend those inalienable secured rights within the Constitution for the United States of America. This is an action to enforce the liability of the Debt Collectors/Defendants for violations of this Consumers' protections under the FDCPA, the Constitution for the United States of America, and other consumer protection laws which were enacted by Congress to protect Consumers from illegal, harassing, deceptive and abusive debt collection activities.

The rules of law governing this Complaint is the FDCPA, *15 U.S.C. §1692f(6)* the Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC) and Article III, Section 2 of the United States Constitution. The language to be used in this matter is the Plaint Writing Act of 2010 – which has been enacted by Congress through Executive Order 13563. It requires federal agencies to use clear communications that the public can easily understand and written in plain language.

Any motions or pleadings, that contain legalese and are not written in plain English for the Consumer to understand, will be intentionally confusing, abusive, profane, obscene and harassing to the Consumer, would be a violation of *15 U.S.C. § 1692d(2)*, and will be assessed at an additional $5,000.00 per occurrence and added to this Consumer's verified claim.

Any response, communications or counterclaim to this Consumer's Complaint verified claim, from any Debt Collector/Defendant in the form of pleadings or otherwise, should be verified, under oath and penalty of perjury, as required by law. There will be no exceptions. Any false statements made in any communications by the Defendants in this enforcement action, would be considered perjury. Each occurrence of perjury will be assessed at $25,000.00 and will be added to the Consumers' damages.

Any debt collector or attorney attempting to come into this consumer matter, MUST have prior consent from the Consumer or a court of competent jurisdiction to enter their appearance and MUST have the proper license; and MUST be properly bonded and insured in an amount to cover all of the Consumers' damages in this action.

## IV.   DATE OF DETERMINATION

Plaintiffs herein request that the date of the Judicial determination sought be that of the date of the filing of the Complaint.

## V.   FACTUAL ALLEGATIONS

On June 21, 2007, Plaintiffs FARID GHALEHTAK and SHIRIN TABATABAI executed a Note and Deed of Trust in favor of First National Bank of Arizona, hereinafter referred to as FNBA. FNBA is a "creditor" as defined by the FDCPA, *15 U.S.C. §1692a(4)*. The transaction as defined by the FDCPA, *15 U.S.C. §1692a(5)* is a debt and hereinafter referred to as a "debt" or "debt obligation". Attached as **Exhibit "A"** and incorporated herein by reference is a true and correct copy of the Deed of Trust, hereinafter referred as DOT.

7

COMPLAINT

On June 30, 2008, with no advance notice to the public, FNBA merged with First National Bank of Nevada. On July 25, 2008, First National Bank of Nevada was closed by the Office of the Comptroller of Currency.

On information and belief, Plaintiffs allege that sometime after the origination of the debt obligation, the debt obligation was allegedly sold to another entity or entities. The entity or entities are not any of the named Defendants in this action.

In 2009, Plaintiffs experienced unforeseen financial hardship that caused them to fall behind in their mortgage payments. They initiated loan modification negotiations with their previous servicer. After many failed attempts to modify, the servicing of the debt obligation was transferred to PennyMac Loan Services, LLC, hereinafter referred to as PLS. Plaintiffs loan was already in default when PLS took over the servicing of Plaintiffs loan and continued with foreclosure proceedings. Despite failed efforts to obtain a suitable modification agreement, Plaintiffs resumed making monthly payments to PLS. Plaintiffs continued to make payment to PLS until March of 2012. Since March of 2012, Plaintiffs have not made any payments on the alleged debt and the debt is contractually due for the March 1, 2012 payment.

Over the past nearly 6 years or so, Plaintiffs have sent numerous letters and made several attempts to find out who is entitled to payment on the alleged debt. Plaintiffs' attempts have been unsuccessful and the identity of the true beneficiary to the alleged debt remains unknown to them. On or about August 14, 2017, Plaintiffs were informed that the servicing of the debt was being transferred, yet again, from PLS to Defendant

FAY. Attached as **Exhibit "B"** and incorporated herein by reference is a true and correct copy of the Notice of Servicing Transfer.

On or about August 30, 2017, Plaintiffs were sent a Notice of Sale of Ownership of Mortgage Loan. This notice informed Plaintiffs that the debt was purportedly sold to a new entity, Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2, hereinafter referred to as Wilmington as Trustee of the 2014-2 Trust. Attached as **Exhibit "C"** and incorporated herein by reference is a true and correct copy of the Notice of Sale of Ownership. Plaintiffs adamantly disputes this information and alleged transfer.

The FDCPA gives an exception set out in *15 U.S.C. §1692a(6)(F)(iii)* holding that "exception 'does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such, regardless of the loan's actual status.'" *Tibarassi v. Chase Home Finance, LLC*, 2015 WL 1402016, at *8 (C.D. Cal. Mar. 24, 2015) (citations omitted). In the case at bar, Plaintiffs alleged debt was in default due for the March 1, 2012 payment at the time Defendant FAY acquired the debt. Plaintiffs' allegations do not fail pursuant to the *15 U.S.C. §1692a(6)(F)(iii)* exception.

Since the acquisition of the alleged debt, Plaintiffs allege that Defendant FAY has failed to contract them, failed to validate the debt, and continues to attempt to collect payment and enforce the security interest by taking a non-judicial action by scheduling foreclosure dates against their Property without proper validation.

//

9

COMPLAINT

## A.   Recorded Chain of Title

In researching the chain of title to their Property in the Alameda County Recorder's Office, Plaintiffs learned that on or about October 2, 2015, Mortgage Electronic Registration Systems, Inc., hereinafter referred to as MERS, as nominee of First National Bank of Arizona ("FNBA"), its successors and/or assigns, "For Value Received" granted, assigned, and transferred all beneficial interest under the Deed of Trust to FNBN I, LLC by way of an Assignment of Deed of Trust, hereinafter referred to as ADOT.  Plaintiffs adamantly disputes the contents of this instrument.  Plaintiff contends FNBN I, LLC was never the beneficiary or owner of the alleged debt because the ADOT was executed while the debt was in default and due for the March 1, 2012 payment.  Although Plaintiff has been informed that there has been a sale of the ownership of the alleged debt, to date there has been no documentation recorded to reflect a change of ownership.  Plaintiff alleges that any change of ownership that occurred after March 1, 2012, would be a debt collector and not a creditor under the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)*.  Attached as **Exhibit "D"** and incorporated herein by reference is a true and correct copy of the ADOT.

On October 12, 2015, a Substitution of Trustee, hereinafter referred to as SOT, was executed and subsequently recorded against Plaintiffs' Property on October 22, 2015 attempting to substitute the original trustee to Defendant TC.

This SOT is invalid pursuant to California *Civil Code §2934(a)(1)(A)(C)*.  Pursuant to *Civil Code §2934(a)(1)(A)(C)* only the beneficiary of the NOTE can substitute a

foreclosing trustee under a DOT.  There is no valid recorded document that evidences the SOT was executed by Plaintiff's beneficiary or creditor or an agent of the true creditor. The SOT was executed by PLS, as its attorney-in-fact, for FNBN I, LLC who was a debt collector with no beneficial interest in the alleged debt.  In addition, Plaintiffs allege that the SOT is null and void because it violates the requirements of California *Civil Code §1095*.  *Civil Code §1095* states: "When an attorney-in- fact executes an instrument transferring an estate in real property, they must subscribe the name of his principal to it, and his own name **as attorney in fact.**"  The instrument executed in this instrument does not meet this requirement.  The SOT was executed without subscribing the principal's name, which should be the actual creditor or beneficiary and not FNBN I, LLC, and therefore invalidates the transaction.  The SOT is void.  *Mitchell v. Benjamin Franklin Bond & Indem. Corp.*, 13 Cal.App.2d 447, 448 [57 P.2d 185]; *Hodge v. Hodge*, 257 Cal.App.2d 31 (1967).  Plaintiffs adamantly disputes the contents of this SOT. Because PLS, as attorney in fact, had no authority to execute the SOT, the SOT is invalid. The document is void and no legal foreclosure sale can take place.  Attached as **Exhibit "E"** and incorporated herein by reference is a true and correct copy of the SOT.

On October 23, 2015, a Notice of Default, hereinafter referred to as NOD, was executed and subsequently recorded against Plaintiffs Property on October 26, 2015.  The NOD falsely stated that FNBN I, LLC was the beneficiary of the alleged debt and had the authority to enforce a security on Plaintiffs' Property.  Plaintiff alleges that they were not their true creditors and had no right or authority to enforce a foreclosure action.  Plaintiffs

11

COMPLAINT

allege that Defendant FAY is now attempting to enforce the obligation using the same NOD which is in violation of California *Civil Code §2924, et. seq*. Attached as **Exhibit "F"** and incorporated herein by reference is a true and correct copy of the NOD.

On or about August 22, 2017, Plaintiffs received by certified and regular mail a Notice of Trustee's Sale, hereinafter referred to as NOS. The NOS is in violation of the FDCPA, *15 U.S.C. §1692f(6)* which states that a debt collector may not use unfair or unconscionable means to enforce a security and take or threatens to take any non-judicial action to effect dispossession or disablement of property if they are without authority.

Here, Plaintiffs allege that Defendant FAY is a debt collector and has no legal right or authority to enforce a security interest or attempt to collect any payments on Plaintiffs' Property. Attached as **Exhibit "G"** and incorporated herein by reference is a true and correct copy of the NOS.

*15 U.S.C. §1692j(a)* states the following:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

## VI.   PLAINTIFFS HAVE A PRIVATE RIGHT TO ACTION

As "consumers" with protections under the FDCPA and the CFPB, Congress has afforded Plaintiffs a "private right of action" for damages caused by the illegal, deceptive and abusive collection activities of a "debt collector". A "consumer" has the private right to exercise every provision in the consumer protection laws or any other constitutional

COMPLAINT

protections that have been afforded to them as "consumers".

The CFPB affirms that Congress intended the FDCPA to be primarily self-enforcing, and the "consumer" does not have to ask permission to enforce it.  The CFPB's Supplemental Amicus Brief for *Bock v. Pressler, LLP*, No. 15-1056 stated the following:

> "The Bureau has a substantial interest in plaintiffs' standing under Article III to bring in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act).  Although the Bureau and various other federal Agencies have authority to enforce the Act, *15 U.S.C. § 1692l*, **Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977).  An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts.** *Emphasis added.*

If Defendant FAY, as a debt collector, feel they have a lawful, bona fide, or verified claim to Plaintiffs' personal, private Property, then they MUST file a verified counterclaim pursuant to *15 U.S.C. §1692i*.

### FIRST CAUSE OF ACTION – VIOLATION OF 15 U.S.C. §1692f(6)
[Against All Defendants and Doe Defendants]

1. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

2. Defendants FAY and TC are violating *15 U.S.C. §1692f(6)* by perpetrating as "creditors" and  threatening to proceed with a non-judicial foreclosure action on Plaintiffs' Property when they have no present right to possession of the Property claimed as collateral through an enforceable security interest and there is no present intention to

COMPLAINT

take possession of the property.

3. *15 U.S.C. §1692f(6)* regulates more than just the collection of a money debt, it prohibits a non-judicial action to dispossess Plaintiffs from their home without a legal ability to do so. Plaintiffs allege Defendants are debt collectors attempting to enforce a security interest by using unfair or unconscionable means to collect or attempt to collect a debt.

4. In California only a "creditor" may enforce a foreclosure. Defendants are debt collectors as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)* and are threatening Plaintiffs by attempting to enforce a security interest by conducting a non-judicial act and scheduling foreclosure dates on Plaintiffs' Property in violation of *15 U.S.C. §1692f(6)*.

5. As alleged herein, the alleged debt was not legally transferred, conveyed, or assigned to any one before the alleged debt fell into default. Any interest or claim claimed by an entity who claims to be a beneficiary/creditor was acquired after the alleged debt was in default. As defined by the FDCPA, they are debt collectors without authority to enforce a security interest.

6. Plaintiffs have been damaged by Defendants' wrongful conduct and blatant disregard for the law in an amount to be determined at trial.

7. In addition to their liability for actual damages caused to Plaintiffs, Defendants are also liable for statutory damages pursuant to *15 U.S.C. §1692k*, in an amount to be determined at trial.

COMPLAINT

8.  Defendants' conduct as herein alleged continues to be oppressive, fraudulent, and malicious, and therefore Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION – VIOLATION OF 15 U.S.C. §1692, ET SEQ.
[Against All Defendants and Doe Defendants]

9.  Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

10.  Under the FDCPA, the **entire** FDCPA can apply to a party to whose principal business is enforcing security interests but who nevertheless fits *§1692a(6)'s* general definition of a debt collector.

11.  Defendants FAY and TC are attempting to collect payments, engaging in other unlawful collection practices, and threatening to take a non-judicial action to enforce a security interest in violation of the FDCPA.

12.  Plaintiffs allege that Defendants are falsely representing the status of the alleged debt obligation and are misleading Plaintiffs to believe they have the ability to enforce the alleged debt obligation, in which they have no pecuniary equitable, or legal interest.

13.  Defendants have used that data in their illegal acts and conduct of collecting an alleged debt in their illegal acts and conduct of collecting an alleged debt from Plaintiff who is a consumer.  The data that the Defendants have used in their illegal debt collection activities is for an alleged debt that was in default.

14.  At no time have Plaintiffs given to Defendant their prior consent, as debt

15

COMPLAINT

collectors, to contact them nor did Defendants receive express permission from a court of competent jurisdiction in violation of *15 U.S.C. §1692c(a)*. The law of the FDCPA is very clear. A debt collector must obtain permission to contact a "consumer" regarding an alleged debt. If they do not get permission, then they must obtain permission from a court of competent jurisdiction. Defendants never obtained prior permission from Plaintiffs nor a court of competent jurisdiction. Plaintiffs gave permission to creditors not debt collectors when they executed the DOT.

15. In August of 2017, Plaintiffs found posted on the front door of their Property a NOS for all to see causing Plaintiff embarrassment and humiliation in front of their neighbors. This is in violation of *15 U.S.C. §1692d(1)* and *15 U.S.C. §1692f(6)*.

16. Plaintiffs have never received verification from the original creditor in the form of genuine loan level account documentation, and validation sworn to under penalty of perjury, and under oath from Defendants as required by under the FDCPA.

17. Defendants are attempting to proceed with an illegal debt collection action dubbed a foreclosure when they had no legal authority to do so violating *15 U.S.C. §1692e(5), 15 U.S.C. §1692f(6)(A), (B), and (C)*, and *15 U.S.C. §1692i*.

18. Every written communication taken by Defendants including the NOD, SOT, and NOS is an attempt to collect a debt and are violations of the FDCPA pursuant to *15 U.S.C. §1692e(5), 15 U.S.C. §1692e(6)(B), 15 U.S.C. §1692i, 15 U.S.C. §1692j(a) and (b)*.

19. Defendants took Plaintiffs' personal, private information and made it public,

16

COMPLAINT

and distributed it to third parties without the Plaintiffs' authorization in violation of *15 U.S.C. §1692c(b)*. Defendants have refused to provide adequate and sufficient verification and validation of any alleged debt as requested by Plaintiffs. Defendants have stolen Plaintiffs' personal, private information and put it into a non-judicial act without Plaintiffs' authorization or consent.

20. The foreclosure documents were created and publicly recorded in violation of *15 U.S.C. §1692j(a)(b)* and was compiled and designed in order to collect payment and enforce the security interest from an illegal sale of the Plaintiffs' personal private Property.

21. Defendants' behavior and conduct have injured and harmed Plaintiffs with their willful and continuous illegal, deceptive and criminal violations of federal and state law in their attempt to collect an unverified alleged debt initiating and attempting to conduct a non-judicial foreclosure in violation of *15 U.S.C. §1692f(6)*.

22. Defendants FAY and TC are violating the FDCPA by attempting to collect an alleged debt on behalf of another, and they are using instrumentalities of interstate commerce, and the mail (U.S.P.S.) to communicate with the Plaintiffs. They are a debt collector as defined under *15 U.S.C. § §1692f(6) §1692a(6)*.

23. Plaintiffs could not have reasonably known of the existence of a claim for violation of *15 U.S.C. §1692e* because Defendants fraudulently concealed the fact that they are not entitled to enforce the alleged debt.

24. As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to

17

COMPLAINT

actual damages pursuant to *15 U.S.C. §1692k(a)(1)*; statutory damages in an amount up to $1,000.00 pursuant to *15 U.S.C. §1692k(a)(2)(A)*; reasonable attorneys' fees, and costs pursuant to *15 U.S.C. §1692(a)(3)*; and declaratory relief, from Defendant herein.

## THIRD CAUSE OF ACTION – VIOLATION OF CIVIL CODE §2923.5
[Against Defendant FAY and Doe Defendants]

25.  Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

26.  Plaintiffs allege that at all times mentioned herein the Subject Property is their owner-occupied residence. Pursuant to *California Civil Code § 2923.5(a)* under California HBOR, the burden of compliance is placed on the mortgage servicer. Defendant FAY, who just acquired the loan servicing effective September 2, 2017, has failed to properly interact with Plaintiff in exploring Plaintiff's options under **"Foreclosure Prevention Alternative"**. The law defines **"Foreclosure Prevention Alternative"** as any available loss mitigation option. Instead FAY attempted to proceed with a non-judicial foreclosure in violation of *15 U.S.C. §1692f(6)*.

27.  Pursuant to the Subject Deed of Trust, in the event of a default, the creditor may invoke the power of sale and any other remedies permitted by applicable law. Plaintiff alleges that FAY is not acting on behalf of the true creditor and they themselves are a "debt collector" with no authority to attempt to collect or proceed with a nonjudicial foreclosure action.

28.  *Civil Code §2923.5* applies to "first lien mortgages or deeds of trusts that are secured by owner-occupied residential real property containing more than four dwelling

units." For these purposes, Plaintiffs have satisfied this requirement.

29. *Civil Code §2923.5(a)(2)* requires a mortgagee, beneficiary or authorized agent to contact a borrower in person or by telephone to assess the borrower's financial status and explore options for the borrower to avoid foreclosure at least 30 days prior to filing a NOD. An NOD that is filed without complying with *Civil Code §2923.5* is null and void. The NOD that was filed in 2015, prior to Defendant's alleged ownership and acquisition, is null and void.

30. Plaintiffs allege that Defendant FAY failed to contact them either in person or by telephone to assess their financial status and fully explore alternatives for them to avoid foreclosure, such as modification, deed-in-lieu and short sale, at least 30 days prior to recording a NOD or proceeding with a non-judicial action. The NOD recorded in 2015 was recorded without the requirements of *Civil Code §2923.5(a)(2)* being met, thereby making the NOD void.

31. Plaintiffs allege that the declaration attached to the NOD is false and fraudulent in that it states that "[t]he mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California *Civil Code §2923.5(b)* declares that the mortgagee, beneficiary or the mortgagee's beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California *Civil Code §2923.5.*

32. *Civil Code §2923.5(g)* allows a mortgagee, beneficiary, or authorized agent to record an NOD absent personal contact only if they have tried with due diligence to

contact the borrower.  In order to satisfy the due diligence requirements, the mortgagee, beneficiary or authorized agent must: 1) send the borrower a first class letter included the HUD-certified housing counseling agency toll-free number; 2) make three separate attempts at telephone contact at different hours and on different days; 3) send the borrower a certified letter with return receipt requested; 4) provide a toll-free number for the borrower to contact a live representative of the mortgagee, beneficiary or authorized agent; and 5) post a prominent link on the homepage of its website to relevant foreclosure avoidance sources. (*Civil Code §2923.5(g)*).

33.  Plaintiffs have maintained the same telephone number since the inception of the Subject loan.  Defendant FAY should be well aware of these phone numbers as evidenced by the fact FAY was able to contact Plaintiffs for the purpose of attempting to collect payments and attempting to foreclose on their Property.  All of Plaintiffs' phones were equipped with automated answering machines and caller identification but Plaintiffs have never received any messages from Defendant FAY indicating that they had a desire to speak with Plaintiffs about their financial status and alternatives to foreclosure.  Furthermore, Plaintiffs also never received a certified letter from FAY stating they were trying to contact Plaintiffs.  As a result, the due diligence requirements of *Civil Code §2923.5(g)* were also not met prior to the recording of the NOD.

34.  Plaintiffs have been prejudiced by Defendant's failure to comply with *Civil Code §2923.5* because they are being robbed of the opportunity to be informed of and explore their alternatives to foreclosure prior to the NOD being recorded and/or their

attempts to foreclosure on their Property.

35. Plaintiff alleges they are entitled to foreclosure postponements until Defendant FAY complies with pre-NOD personal contact requirements or due diligence requirements of *Civil Code §2923.5*. (*See Mabry, supra* [stating that the remedy for failure to comply with the pre-NOD requirements of *Civil Code §2923.5* is postponement of the Trustee's Sale until there has been compliance with *Civil Code §2923.5*.

## FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA CIVIL CODE §§2924.17, 2924(a)(6)
### [Against Defendant FAY and Doe Defendants]

36. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

37. Defendant, FAY is in violation of California HBOR (AB 278/SB 900). The law prohibits recording "robodocs" on ALL mortgage-related notices of default and support declarations, notices of sale, assignments of deed of trust, and substitutions of trustee recorded in connection with a nonjudicial foreclosure, as well as declarations filed in court with respect to any foreclosure proceeding. Documents must be accurate, complete and supported by competent and relevant evidence. Defendants have violated the notice by not complying with *Civil Code § 2924.17*. Defendant has failed to provide competent and relevant support to their authorization to proceed with a non-judicial action against Plaintiffs' Property.

38. The law under California HBOR forbids an entity from initiating and/or proceeding with a non-judicial foreclosure unless it is the holder of the beneficial interest

COMPLAINT

under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6)*. Plaintiffs contends that Defendant FAY is not a creditor but is a debt collector as defined by the FDCPA.

39. Defendant FAY has failed to provide an adequate chain of title that would demonstrate Wilmington as Trustee of the 2014-2 Trust's authority to proceed with a foreclosure despite Plaintiffs' numerous request to provide such documentation and their failure to provide competent and relevant evidence to support the accuracy of their recorded documents.

40. The law further affords a right to cure violations up to a foreclosure sale but FAY has failed to correct any "Material Violations". Pursuant to the law, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent can avoid liability for any violation that it has corrected and remedied directly or through a third-party contractor prior to recordation of a trustee's deed upon sale.

41. The law affords a private right of action for Borrowers to seek a court injunction for a material violation of provisions up until a foreclosure sale is completed, and may seek attorney's fees. The law under California HBOR forbids an entity from initiating and/or proceeding with a nonjudicial foreclosure unless it is the holder of the beneficial interest under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6)*.

## FIFTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA CIVIL CODE §2934a(a)(1)(A)(C)
### [Against All Defendants and Doe Defendants]

42. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

43. Pursuant to this statute, only the beneficiary of the note can substitute a Trustee under a Deed of Trust. *Civil Code §2934a(a)(1)(A)(C)* states: The substitution must be signed pursuant to subparagraph (B) of paragraph (1) and the undersigned together hold more than 50 percent of the record beneficial interest of notes secured by the same reap property or of undivided interests in a note secured by real property equivalent to a series transaction.

44. In the case at bar, because there is nothing to demonstrate that the Note was transferred to Defendant Fay's agent before the debt was in default, PLS could not have legally been the beneficiary or the holder of the Note at the time the SOT was executed. Thus, the SOT is void.

45. Furthermore, the SOT is fatally flawed and void because PLS failed to meet the requirement mandated under law. California *Civil Code §1095* states: "When an attorney in fact executes an instrument transferring an estate in real property, they must subscribe the name of his principal to it, and his own name as attorney in fact.". PLS failed to subscribe the name of the principal and attached a copy of the recorded power of attorney. Plaintiff alleges that *Civil Code §1095* applies to SOTs because a properly executed SOT changes which trustee may exercise the power of sale, which is conveyed

COMPLAINT

by the trustee's deed upon sale at a non-judicial sale.

46.  Failure to execute and/or record a *valid* SOT is a substantial defect and impacts a right afforded to borrowers to know who the trustee is that will sell their property at a foreclosure sale.  As such, any foreclosure sale would be VOID and not merely VOIDABLE, and no tender is required to seek to file a lawsuit to set aside the sale, if one occurred.  In the case at bar, a foreclosure sale has not occurred as of the filing of this Complaint.

## SIXTH CAUSE OF ACTION – NEGLIGENT REPRESENTATION
[Against Defendant FAY and Doe Defendants]

47.  Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

48.  Defendants' conduct, as alleged above and beneath, constitutes an intentional misrepresentation.

49.  California *Civil Code §1710(2)*, sets forth the cause of action for a negligent misrepresentation.  The elements for a cause of action for a negligent misrepresentation are (1) defendant makes a representation as to a part or existing material fact, (2) defendant made the misrepresentation without any reasonable grounds for believing it to be true, (3) the representation was made with intent to induce the plaintiff to rely upon it, (4) plaintiff was unaware of the falsity of the representation and acted in justifiable reliance on the representation, and (5) damages.

50.  As established above and below, Defendants have falsely represented themselves to Plaintiff as a creditor of the alleged debt.  Defendants have fraudulently

24

COMPLAINT

concealed the fact that they are not entitled to enforce the alleged debt and that they are falsely representing to Plaintiffs the true creditor of the alleged debt.

51. As a result of Defendants' misrepresentation, Plaintiffs have suffered and continues to suffer damage to their credit, excessive fees and charges, and the imminent foreclosure of their Property.

52. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs and suit reasonable attorneys' fees, if necessary, and such other and further relief as the Court may deem just and proper.

## SEVENTH CAUSE OF ACTION – VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, et seq.
[Against All Defendants and Doe Defendants]

53. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

54. California *Business and Professions Code § 17200 et seq.* prohibits acts of unfair competition, which means and includes any "fraudulent business practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of *§ 17200*.

55. As more fully described above and below, Defendants, as "debt collectors" are doing certain acts and practices, such as attempting to collect on a debt to which they have no right or authority, which are likely to deceive, constituting a fraudulent business act or practice.

56. Specifically, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, the process of

25

COMPLAINT

initiating related matters by:

    a) Assessing improper or excessive fees;

    b) Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees:

    c) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    d) Failing to provide adequate statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

    e) Seeking to collect and collecting various improper fees, costs and charges that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

    f) Mishandling borrowers' documents resulting in fraudulent defaults and foreclosures;

    g) Treating borrower as in default on their loans even though the borrowers are under no obligation to make payments to Defendants, or have otherwise complied with mortgage requirements or California law.

    h) Failing to disclose the fees, costs and charges allowable under the contract;

    i) Ignoring Borrowers' Qualified Written Request and Borrowers' demand to produce the original Promissory Note or comply with Borrowers' request for an accounting of all proceeds/payments involved with Borrowers' loan;

    j) Executing, manufacturing, creating and recording false, fraudulent, forged and misleading deeds, assignments, notice of sale/default documents; and

    k) **Failing to disclose the principal for which documents were being executed and recorded in violation of *Cal. Civ. Code section 1095*;**

    l) **Acting as beneficiaries and trustees without the legal authority to do so.**

57. Defendants failed to act in good faith as they took and charged fees for services but did no render them competently and in compliance with applicable law.

58. Moreover, Defendants engaged in a uniform pattern and practice of unfair and over-aggressive servicing that resulted in the assessment of unwarranted and unfair fees against California consumers, and premature default resulting in unfair and illegal foreclosure proceedings. The scheme implemented by Defendants were designed to defraud not just Plaintiffs but all California consumers and enrich the Defendants.

59. The foregoing acts and practices have caused substantial harm to not only

COMPLAINT

Plaintiffs but to all its California consumers and to all California taxpayers.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against all Defendants, and each of them, jointly and severally, as follows:

1. For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,500,000.00 against Defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3. For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property;

4. For a declaratory judgment finding that Defendants do not have any legally cognizable rights as to Plaintiffs, the Property, the alleged debt, tendered to and executed by Plaintiffs;

5. For the Court to issue an order restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing so during the pendency of this matter;

6. For reasonable cost of suit incurred in this action; and

7. For reasonable attorney's fees, if any; and

8. For such additional and further relief as the Court may deem proper and reasonable.

//

COMPLAINT

Respectfully submitted by:

DATED:  October 16, 2017

_____

Farid Ghalehtak
Plaintiff

_____

Shirin Tabatabai
Plaintiff

## VERIFICATION

We, Farid Ghalehtak and Shirin Tabatabai, individuals, are the Plaintiffs in the above-entitled action.  We have read the foregoing complaint and know the contents thereof.  The same is true of our own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Oakland, California on October 16, 2017.

_____

Farid Ghalehtak
Plaintiff

_____

Shirin Tabatabai
Plaintiff

COMPLAINT

Exhibit A

RECORDING REQUESTED BY:
ALLIANCE TITLE COMPANY

Recording Requested By:
**First National Bank of
Arizona**
Return To:
**First National Bank of
Arizona**
**P.O. Box 66604**
**Phoenix, AZ 85082**

Prepared By:
**Michael Erickson**

# 11539606

2007236647    06/26/2007 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        70.00

COUNTY OF ALAMEDA CALIFORNIA

21  PGS

—————————[Space Above This Line For Recording Data]—————————

# DEED OF TRUST

MIN 100135553000585863

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 21, 2007**                    ,
together with all Riders to this document.
**(B) "Borrower"** is **FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE;**

Borrower's address is **1826 LEIMERT BOULEVARD, Oakland, CA 94602**                    .
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **First National Bank of Arizona**

Lender is a **NATIONAL BANKING ASSOCIATION**
organized and existing under the laws of **United States of America**                    .

**5300058586**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

VMP®  -6A(CA) (0207)
Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is

**(D) "Trustee"** is **ALLIANCE TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **June 21, 2007**
The Note states that Borrower owes Lender **eight hundred four thousand nine hundred and 00/100** Dollars
(U.S. $**804,900.00**         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2047**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

5300058586

(VMP) -6A(CA) (0207)              Page 2 of 15         Initials:                Form 3005   1/01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          **COUNTY**                        of                  **Alameda**                        :
       [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
**SEE ATTACHED EXHIBIT "A"**

Parcel ID Number: **029A-1340-008**                           which currently has the address of
**1826 LEIMERT BOULEVARD**                                                              [Street]
**Oakland**                                          [City], California **94602**        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**5300058586**

-6A(CA) (0207)                          Page 3 of 15                    Initials             Form 3005   1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

5300058586

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

5300058586

-6A(CA) (0207)

Page 6 of 15

Initials

Form 3005   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

5300058586

Initials

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

5300058586

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

5300058586

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

5300058586

-6A(CA) (0207)          Page 10 of 15          Initials: _____          Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

5300058586

-6A(CA) (0207)                    Page 11 of 15                    Form 3005   1/01

Initials: _____

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any· Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

5300058586

-6A(CA) (0207)          Page 12 of 15                                    Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

5300058586

-6A(CA) (0207)          Page 13 of 15          Initials S.S.          Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                         FARID GHALEHTAK            -Borrower


_____        _____ (Seal)
                                         SHIRIN TABATABAI           -Borrower


_____ (Seal)         _____ (Seal)
                   -Borrower                                        -Borrower


_____ (Seal)         _____ (Seal)
                   -Borrower                                        -Borrower


_____ (Seal)         _____ (Seal)
                   -Borrower                                        -Borrower


**5300058586**

State of California
County of _CONTRA  COSTA_                    } ss.

On  _JUNE 21, 2007_  before me,  _K. WADDELL , NOTARY PUBLIC_

personally appeared

**FARID GHALEHTAK & SHIRIN TABATABAI**

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed
to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their
authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_K. Waddell_ _____ (Seal)

K. WADDELL
COMM. #1608153
NOTARY PUBLIC ● CALIFORNIA
CONTRA COSTA COUNTY
Comm. Exp. SEPT. 12, 2009

5300058586

# ADJUSTABLE RATE RIDER
**(MTA-Twelve Month Average Index - Payment Caps)**

THIS ADJUSTABLE RATE RIDER is made this 21st day of June, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ("Lender") of the same date and covering the property described in the Security Instrument and located at:

1826 LEIMERT BOULEVARD, Oakland, CA  94602
[Property Address]

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.     INTEREST**
**(A)   Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.490%.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B)   Interest Rate Change Dates**
The interest rate I will pay may change on August 1, 2007 and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)   Index**
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published  by the Federal Reserve Board in the Federal

5300058586

Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding three and two-hundred seventy-five thousandth(s)  percentage point(s)  3.275% ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.  My interest will never be greater than 9.95%. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.     PAYMENTS**

### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on August, 2007. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 62768, PHOENIX, AZ 85082-2768 or at a different place if required by the Note Holder.

### (B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $2,226.95 unless adjusted under Section 3 (F).

### (C)  Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on  August 1, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment of Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

5300058586

### (D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

### (E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

### (F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to One Hundred Fifteen Percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G)  Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H)  Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

5300058586

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if:
(a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

5300058586

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ 6/21/07 (Seal)
FARID GHALEHTAK                    Date

_____ 6/21/07 (Seal)
SHIRIN TABATABAI                   Date

_____ _____ (Seal)
                                   Date

_____ _____ (Seal)
                                   Date

_____ _____ (Seal)
                                   Date

_____ _____ (Seal)
                                   Date

_____ _____ (Seal)
                                   Date

_____ _____ (Seal)
                                   Date

PayOption MTA ARM Rider                                          10/04
FE-5315 (0412)                    Page 5 of 5

_le No.  11539606-503- RAC

Exhibit A
**LEGAL DESCRIPTION**

All that certain real property in the City of Oakland, County of Alameda, State of California, described as follows:

Lot 3, Block 12, Map of Oakmore Highlands, filed October 14, 1926, in Map Book 10, Page 88, Alameda County Records.

APN No:  029A-1340-008

Exhibit B



**PennyMac**®

Box 514387
Angeles, CA 90051-4387

**Notice Date:** August 14, 2017

**Loan Number:** 1000001411
**Property Address:**
1826 LEIMERT BLVD
OAKLAND CA 94602

▲ 000059          261
FARID GHALEHTAK
SHIRIN TABATABAI
1826 LEIMERT BLVD
OAKLAND CA 94602-1932

## NOTICE OF SERVICING TRANSFER

### ABOUT YOUR LOAN

Effective September 01, 2017, the servicing of your mortgage loan is being transferred from PennyMac Loan Services, LLC ("PennyMac") to Fay Servicing, LLC. This means that after this date, Fay Servicing, LLC will be collecting your mortgage loan payments from you.  Nothing else about your mortgage loan will change.

### WHAT THIS MEANS

PennyMac is now collecting your mortgage payments.  However, PennyMac will stop accepting or processing payments received from you after August 31, 2017.

Fay Servicing, LLC will collect your payments going forward.  Your new servicer will start accepting payments received from you on September 01, 2017.

### WHAT YOU SHOULD DO

**Send all payments due on or after September 01, 2017 to Fay Servicing, LLC at the following address:**

Fay Servicing, LLC
PO Box 88009
Chicago,  IL 60680-1009

If PennyMac is automatically drafting/deducting your monthly payment from your bank account, please see details under the "Important Information" section below.

### PENNYMAC APPRECIATES YOUR BUSINESS

If you have any questions about your mortgage loan or this transfer for either your present servicer, PennyMac, or your new servicer, Fay Servicing, LLC, please contact them using the following information:

| Toll-Free: (800) 777-4001 | Website: www.PennyMacUSA.com | Payments: | Correspondence: |
|---|---|---|---|
| M – F  6:00AM - 6:00PM PT<br>SAT 7:00AM - 11:00AM PT<br>Toll-Free Fax:  (866) 577-7205 | **Secure Messaging Online:**<br>Create an account and/or log in to<br>http://www.PennyMacUSA.com,<br>then look for the Secured Message<br>Center to communicate with us securely. | **Standard Address:**<br>P.O. Box 30597<br>Los Angeles, CA 90030-0597<br>**Overnight Address:**<br>1200 W. 7th Street<br>Suite L-2-200<br>Los Angeles, CA 90017<br>(Please do not send correspondence) | Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051-4387<br>(Please do not send payments) |

Exhibit C

**F**AY
**SERVICING**

P.O. Box 619063
Dallas, TX 75261-9063

August 30, 2017

1-775-06499-0000060-001-01-000-000-000-000



FARID GHALEHTAK
SHIRIN TABATABAI
1826 LEIMERT BLVD
OAKLAND CA  94602-1932

**404 NOTICE**

**NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN**

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new lender. This notice is to inform you that your prior lender has sold your mortgage loan (see loan information below) to the new lender identified below.

The new lender identified below is not the servicer of your loan. The servicer (identified below) acts on behalf of the new lender to handle the ongoing administration of your loan, including the collection of mortgage payments. Please send your mortgage payments as directed by the servicer, and not to the new lender. Payments sent to the new lender instead of the servicer may result in late charges on your loan and your account becoming past due. Neither the new lender nor the servicer is responsible for late charges or other consequences of payments sent to the new lender.

SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW. The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new lender of your request and communicate to you any decision with respect to such request.

Please note that the sale of your loan to the new lender may also result in a change of servicer. If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

LOAN INFORMATION

Date of Loan: 6/21/2007
Original Amount of Loan: $804,900.00
Date Your Loan was Sold to the New Lender: 8/9/2017
Prior Loan Number: 1000001411
Current Loan Number: 0000171625
Address of Mortgaged Property:   1826   LEIMERT BLVD
                                           OAKLAND CA  94602

**SERVICER INFORMATION**

Name: Fay Servicing, LLC
Mailing Address: Attn: Customer Service Department
P.O. Box 809441
Chicago, IL 60680-9441
Telephone Number (Toll free): 1-800-495-7166
Website: https://www.fayservicing.com/

Scope of responsibilities: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan.

**NEW LENDER INFORMATION**

**Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new lender identified below, and not to the new lender. The new lender does not have access to information relating to the administration of your loan, and will not be able to answer most loan-related questions.**

Name: Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2
Mailing Address (not for payments): c/o MFResidential Assets I, LLC
P.O. Box 306
New York, NY 10040-0306
Telephone Number: (212) 202-3274

**AGENT INFORMATION (If the new creditor has granted an agent other than the servicer authority to act on its behalf, contact information for such agent will appear below):**

Name:
Mailing Address:

Telephone Number (Toll free):

**Partial Payments:** The Servicer, on behalf of the lender, may hold partial payments in a separate account until you pay the remainder of the payment, and will then apply the full periodic payment to your loan. If your loan is sold, the new lender may have a different partial payment policy.

The transfer of the lien associated with your loan is, or in the future may be, recorded in the public records of the local County Recorder's office for the county or local jurisdiction where your property is located. Ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

Exhibit D

276900   10/13/2015 09:41 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:      25.00

1   PG

RECORDING REQUESTED BY:

LSI Title Company

WHEN RECORDED MAIL TO:

FNBN I, LLC
c/o PennyMac Loan Services, LLC
6101 Condor Dr., Suite 320
Moorpark, CA 93021

| APN: 029A-1340-008-00 | TS No: CA08003413-15-1 | MIN No: 100135553000585863 |
| TO No: 150245638-CA-VOI | | MERS Phone: 888-679-6377 |

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST NATIONAL BANK OF ARIZONA, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-20026, hereby grants, assigns, and transfers to FNBN I, LLC all its interest under that certain Deed of Trust dated as of June 21, 2007, executed by FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE as Trustor(s), to ALLIANCE TITLE as Trustee and recorded June 26, 2007 as Instrument No. 2007236647 of official records in the Office of the County Recorder of Alameda County, California.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property more commonly known as **1826 LEIMERT BOULEVARD, OAKLAND, CA 94602** and more fully described in said Deed of Trust.

Dated: Oct. 2, 2015

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST NATIONAL BANK OF ARIZONA, its successors and assigns

By: _____
Christopher Santana
Assistant Secretary

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___California___

COUNTY OF ___Ventura___

On Oct. 2, 2015 before me, Frank Michael Hoff, Notary Public, personally appeared Christopher Santana, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___California___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

FRANK MICHAEL HOFF
Commission # 2094816
Notary Public - California
Ventura County
My Comm. Expires Jan 21, 2019

Exhibit E

RECORDING REQUESTED BY:

LSI Title Company

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

COUNTY OF ALAMEDA
CALIFORNIA

2015285007   10/22/2015 09:50 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:   25.00

1   PG

---

APN: 029A-1340-008-00          TS No: CA08003413-15-1          TO No: 150245638-CA-VOI

## SUBSTITUTION OF TRUSTEE

WHEREAS, FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE was the original Trustor, ALLIANCE TITLE was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST NATIONAL BANK OF ARIZONA, its successors and assigns, was the original Beneficiary under that certain Deed of Trust dated June 21, 2007 and recorded on June 26, 2007 as Instrument No. 2007236647 of official records in the Office of the Recorder of Alameda County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, FNBN I, LLC hereby substitutes MTC Financial Inc. dba Trustee Corps, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: OCT. 12, 2015

_PennyMac Loan Services, LLC its attorney_

FNBN I, LLC
By: PennyMac Loan Services, LLC, its attorney-in-fact

By: _____ Brett Gernon _____
Authorized Representative

_Brett Gernon Authorized Representative_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF   California

COUNTY OF   Ventura

On OCT. 12, 2015 before me, _Frank Michael Hoff_
                                    Frank Michael Hoff
Notary Public, personally appeared _★ Brett Gernon_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

FRANK MICHAEL HOFF
Commission # 2094816
Notary Public - California
Ventura County
My Comm. Expires Jan 21, 2019

★ Brett Gernon

Exhibit F

20 37610   10/26/2015 09:56 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:        31.00

RECORDING REQUESTED BY:

and

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

| APN: 029A-1340-008-00 | TS No: CA08003413-15-1 | TO No: 150245638-CA-VOI |

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)**

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is **$276,230.43 as of October 23, 2015**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits

**See Attached Declaration**

APN: 029A-1340-008-00          TS No: CA08003413-15-1          TO No: 150245638-CA-VOI

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **FNBN I, LLC c/o MTC Financial Inc. dba Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Ref No: CA08003413-15-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of June 21, 2007, executed by FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST NATIONAL BANK OF ARIZONA, the original Beneficiary, recorded June 26, 2007, as Instrument No. 2007236647, of the official records in the Office of the Recorder of Alameda County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $804,900.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON March 1, 2012 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC Financial Inc. dba Trustee Corps, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: October 23, 2015          **MTC Financial Inc. dba Trustee Corps**
                                 **as Duly Appointed Successor Trustee**

                                 By: Myron Ravelo, Authorized Signatory

MTC Financial Inc. dba Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

| | |
|---|---|
| Borrower(s): | FARID GHALEHTAK |
| | SHIRIN TABATABAI |
| Mortgage Servicer: | PennyMac Loan Services, LLC |
| Property Address: | 1826 LEIMERT BOULEVARD |
| | OAKLAND, CA 94602 |
| T.S No: | CA08003413-15-1 |

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☑ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the Borrower pursuant to California Civil Code § 2923.55(f) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'Borrower' pursuant to subdivision (c) of Section 2920.5.

4. ☐ No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a).

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, including my review of the mortgage servicer's business records.

Date: 9\ 25\ 2015                    PennyMac Loan Services, LLC, Mortgage Servicer

By                                                            Tiffany Sagarang

                                                            Default Specialist

ATTACHMENT TO NOTICE OF DEFAULT

Exhibit G

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF ALAMEDA COUNTY

RECORDING FEE: __$31.00__

RECORDED ON: __August 22, 2017__

AS DOCUMENT NO: __2017183458__

BY: __s/ VANGIE ORTEGA__

SERVICELINK TITLE COMPANY

---

APN: 029A-1340-008          TS No: CA08003413-15-1          TO No: 150245638-CA-VOI

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BẢY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED June 21, 2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On September 22, 2017 at 12:00 PM, at the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612, MTC Financial Inc. dba Trustee Corps, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on June 26, 2007 as Instrument No. 2007236647, of official records in the Office of the Recorder of Alameda County, California, executed by FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST NATIONAL BANK OF ARIZONA as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: 1826 LEIMERT BOULEVARD, OAKLAND, CA 94602



The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $1,172,869.96 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA08003413-15-1

## <u>Notice to Property Owner</u>

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 for information regarding the Trustee's Sale or visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case, CA08003413-15-1.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Date: August 18, 2017

MTC Financial Inc. dba Trustee Corps
TS No. CA08003413-15-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 866-660-4288

Stephanie Hoy, Authorized Signatory

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.insourcelogic.com
FOR AUTOMATED SALES INFORMATION PLEASE CALL:
In Source Logic AT 702-659-7766

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

TS No. CA08003413-15-1

## NOTICE OF SALE
## SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to FARID GHALEHTAK AND SHIRIN TABATABAI, HUSBAND AND WIFE, in relation to 1826 LEIMERT BOULEVARD, OAKLAND, CA 94602.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST OR MORTGAGE DATED June 21, 2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $1,172,869.96.

Your property is scheduled to be sold on September 22, 2017 at 12:00 PM, at the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612.

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 or visit this Internet Web site address www.insourcelogic.com using the file number assigned to this case CA08003413-15-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling 949-252-8300 TDD: 866-660-4288.

Civil Code Section 2923.3(d)(2) (Revised 3/28/13)

