UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARID GHALEHTAK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FAY SERVICING, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-05976-EMC<br><br>**ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Docket No. 5 |

Plaintiffs Farid Ghalehtak and Shirin Tabatabai seek a temporary restraining order enjoining Defendants Fay Servicing, LLC ("Fay") and MTC Financial Inc. dba Trustee Corps ("Trustee Corps") from pursuing foreclosure proceedings with respect to their residence and compelling Defendants to provide them with "all documents that give[] Defendants authority to proceed with a non-judicial foreclosure." *See* Docket No. 5 at 2. They also request the Court order Defendants to show cause why they should not be restrained during the pendency of the litigation from pursuing the foreclosure in question. *Id.* at 3. The matter came on for hearing on October 24, 2017. For the reasons stated at the hearing herein and below, Plaintiffs' request is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. Complaint and Restraining Order

Plaintiffs filed a verified complaint against Defendants alleging causes of action under the federal Fair Debt Collection Practices Act, *see* 15 U.S.C. § 1692, *et seq.*, California's Homeowner's Bill of Rights ("HBOR"), *see* Cal. Civ. Code § 2924, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*, and negligent misrepresentation. In essence, Plaintiffs allege that Defendants Fay and Trustee Corps lack clear title to their residence

1 and have not complied with various California procedural requirements, and therefore lack the authority to foreclose on their home.

The present application for a temporary restraining order, filed October 20, 2017, seeks to restrain Defendants from proceeding with a non-judicial foreclosure sale currently scheduled for October 25, 2017. Defendants both filed an opposition to the request and appeared at the hearing on the motion.

B. <u>Mortgage History</u>

Plaintiffs have resided at 1826 Leimert Boulevard in Oakland, California ("the Residence") since 2007. On June 21, 2007, Plaintiffs executed a Note and Deed of Trust for the Residence in favor of First National Bank of Arizona ("FNBA"). *See* Compl. at 7, Ex. A (Deed of Trust). FNBA later merged with another bank that was closed in 2008. *Id.* at 8. The servicing of their loan was later transferred to PennyMac Loan Services, LLC ("PLS"). *Id.*

In March 2012, Plaintiffs stopped making mortgage payments, though they acknowledge that a debt is due. *Id.* They claim, however, that despite six years of trying to ascertain which entity is entitled to payments, they "have been unsuccessful and the identity of the true beneficiary to the alleged debt remains unknown to them." *Id.* At the hearing, Plaintiffs conceded they have not made any payments on the loan since 2012.

On October 2, 2015, Mortgage Electric Registration Systems, Inc. ("MERS"), as FNBA's nominee, assigned the Deed of Trust to FNBN I, LLC. *Id.* at 10, Ex. D (Assignment of Deed of Trust). Plaintiff "contends FNBN I, LLC was never the beneficiary or owner of the alleged debt because the ADOT was executed while the debt was in default and due for the March 1, 2012 payment." *Id.* at 10.

On October 22, 2015, a Substitution of Trustee was executed and recorded that purported to substitute the original trustee with Defendant Trustee Corps. *Id.* at 10-11, Ex. E (Substitution of Trustee). Plaintiffs allege this substitution was invalid because "[t]here is no valid recorded document that evidences the SOT was executed by Plaintiff's beneficiary or creditor or an agent of the true creditor" and because it "was executed without subscribing the principals name, which should be the actual creditor or beneficiary and not FNBN I, LLC." *Id.* at 11.

2

On October 23, 2015, a Notice of Default was executed and recorded against the Residence, which Plaintiffs claim "falsely stated that FNBN I, LLC was the beneficiary of the alleged debt and had the authority to enforce a security." *Id.* at 11-12, Ex. F (Notice of Default). The notice stated that Plaintiffs could bring their account into good standing by payment of $276,230.43 as of October 23, 2015. *Id.* It included a declaration under California Civil Code § 2923.55 stating that the mortgage servicer had contacted Plaintiffs to explore their financial situation and other options that might avoid foreclosure, and that 30 days or more had passed since that initial contact was made. *Id.*

On August 14, 2017, Plaintiffs were informed that the servicing of the debt was transferred from PLS to Defendant Fay. Compl. at 8-9, Ex. B (Notice Servicing Transfer). Plaintiffs allege that "[s]ince the acquisition of the alleged debt . . . Defendant FAY has failed to contract [sic] them, failed to validate the debt, and continues to attempt to collect payment and enforce the security interest by taking a non-judicial action by scheduling foreclosure dates against their Property without proper validation." *Id.* at 9.

On August 22, 2017, Plaintiffs received a Notice of Trustee's Sale, which they claim violates 15 U.S.C. § 1692f(6) because Defendant Fay "is a debt collector and has no legal right or authority to enforce a security interest or attempt to collect any payments on [the Residence]." *Id.* at 12, Ex. G (Notice of Trustee's Sale). The notice stated that Defendant Trustee Corps would conduct a non-judicial foreclosure sale of the Residence on September 22, 2017 and stated that the unpaid balance of the loan was estimated to be $1,172,869.96. *Id.* Plaintiffs state that they were able to postpone the date to October 25, 2017.[1] Ghalehtak and Tabatabai Decl. ¶ 8.

On August 30, 2017, Plaintiffs were sent a Notice of Sale of Ownership of Mortgage Loan which informed them the debt was sold to Wilmington Trust, National Association as trustee for MFRA Trust 2014-2. *Id.* at 9, Ex. C (Notice of Sale of Ownership). Defendant Fay remained the

---

[1] Plaintiffs do not explain how they postponed the sale date. In their opposition papers, Defendants claim the sale date was postponed because, on September 20, 2017, a Letina Conley—to whom Plaintiffs had issued a grant deed purporting to assign a 25% interest in the Residence—filed for bankruptcy. Fay's Request for Judicial Notice, Exs. 8 and 9. That bankruptcy petition was dismissed on October 10, 2017.

3

servicer of the loan. *Id.*

C. <u>Plaintiffs' Prior Litigation Against FNBN I, LLC</u>

Plaintiffs did not notify the Court that they previously filed a related action to enforce a mortgage rescission and to collect monetary relief for an alleged defective securitization of the mortgage against FNBN I, LLC under the Truth In Lending Act (TILA) and the Fair Debt Collection Practices Act (FDCPA). *See Ghalehtak v. FNBN I, LLC*, Case No. 3:15-cv-05821-LB (N.D. Cal.). As explained above, FNBN I, LLC was assigned the Deed of Trust in October 2015, an assignment the legitimacy of which Plaintiffs claim to be defective in this case.

In the prior case, Plaintiffs' TILA claim for rescission of their mortgage was dismissed based on the statute of limitations. Their TILA claim that FNBN failed to provide them notice that it had been assigned MERS' interest in the mortgage was dismissed for failure to plead detrimental reliance. Their FDCPA claim against FNBN I was dismissed because the court held that FNBN was the loan's creditor (not a debt collector) and therefore exempt from certain FDCPA requirements, and further because plaintiffs lacked standing to challenge the authority of a foreclosing beneficiary based on allegedly improper securitization. Plaintiffs appealed the district court's TILA holdings, and the Ninth Circuit affirmed. *See Ghalehtak v. FNBN I, LLC*, No. 16-16742 (9th Cir. Jul. 3, 2017).

Any assertion that FNBN I, LLC was not the loan's creditor but in fact a debt collector which challenges FNBN's title because of improper securitization is, as discussed below, likely foreclosed by *Ghalehtak v. FNBN I, LLC* under the doctrine of res judicata.

## II. <u>LEGAL STANDARD</u>

A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that it is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under Rule 65, the court may issue a temporary restraining order without notice to the adverse party or its attorney only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it

4

should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B).

The same standard governs temporary restraining orders and preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 22-24. A temporary restraining order may also be appropriate when a movant raises "serious questions going to the merits" and the "balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cotrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

### III. DISCUSSION

Plaintiffs' request for a restraining order rests on three legal theories. First, Plaintiffs claim Defendants' conduct violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6), because they have no right of possession to the Residence. Second, Plaintiffs claim Defendants' conduct violates the California Homeowner's Bill of Rights, Cal. Civ. Code § 2924, *et seq.*, because Defendants are not authorized to enforce the power of sale contained in the Deed of Trust. Third, Plaintiffs separately claim Defendants violated California Civil Code 2934a because the Substitution of Trustee is not signed by the true loan beneficiary.

For the reasons explained below, Plaintiffs cannot demonstrate a likelihood of success on or even serious questions going to the merits on any of these theories. Accordingly, the Court need not consider whether Plaintiffs have demonstrated a likelihood of irreparable harm or that the balance of equities tips in their favor.[2]

---

[2] Defendant Fay convincingly points out that the exigency here was created by Plaintiffs; they have been on notice regarding the proposed sale since August 2017 but waited until less than three court days prior to the October 25, 2017 sale date to file this motion. At the hearing, Plaintiffs acknowledged receiving a phone call from Defendant Fay as of September 11, 2017 but gave no satisfactory explanation for the delay, particularly in light of their prior litigation history, which demonstrates their familiarity with the federal court process. This fact undermines any argument that the equities lean in Plaintiffs' favor.

5

A. <u>Fair Debt Collection Practices Act Claim</u>

Plaintiffs argue that Defendants are in violation of the FDCPA, Section 1692f(6), which prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

*Id.* Defendants, they assert, have "no present right to possession of the property" due to an improper October 2015 Assignment of Deed of Trust and Substitution of Trustee that broke the chain of title to the loan. For the reasons below, this claim is not likely to succeed.

1. <u>Defendants Are "Debt Collectors" For Purposes of § 1692f(6)</u>

Defendants dispute whether they are "debt collectors" under the FDCPA's statutory definition. *See* 15 U.S.C. § 1692a(5). The Ninth Circuit has recently clarified this issue. In *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571-76 (9th Cir. 2016), the court explained that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Id.* at 572. That is because "[t]he object of a non-judicial foreclosure is to retake and resell the security, not to collect money from the borrower." *Id.* at 571. Thus, a mortgage trustee is not a "debt collector" under the FDCPA's general definition. However, there is an exception for § 1692f(6) claims, for which the FDCPA explicitly defines "debt collector" to include businesses whose primary purpose is "the enforcement of security interests." 15 U.S.C. § 1692a(6); *Ho*, 858 F.3d at 573. In *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964 (9th Cir. 2017), the same principle was applied to a loan servicer. Thus, under *Ho* and *Dowers*, Defendants are "debt collectors" under the FDCPA for purposes of Plaintiffs' Section 1692f(6) claim only.

2. <u>The FDCPA Does Not Create an Individual Injunctive Remedy</u>

Even if Plaintiffs could show that Defendants violated Section 1692f(6), however, that would be insufficient. To prevail on their request for a temporary restraining order, they must also show they are "likely to succeed on [their] claim for injunctive relief as a remedy for any such

6

violation." *Chung v. NGBI, Inc.*, No. CV 09-04878 MHP, 2010 WL 841297, at *2 (N.D. Cal. Mar. 10, 2010) ("A preliminary injunction is generally only available if appropriate in the first instance."); *see also Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). This they cannot do because injunctive relief is not a remedy in individual actions under the FDCPA. *See* 15 U.S.C. § 1692k (enumerating damages, attorney's fees, and costs as available forms of relief); *see also Varnado v. Midland Funding LLC*, 43 F.Supp.3d 985, 992-93 (N.D. Cal. 2014) ("Remedies for claims made under the FDCPA are limited to damages, attorney's fees and costs. [. . . ] Injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA.") (quotation and citation omitted).

For this reason, Plaintiffs have no chance of success on their claim for injunctive relief under § 1692f(6), even if they may have a claim for money damages. This claim therefore does not support issuance of a temporary restraining order.

### 3. Res Judicata Appears To Bar Plaintiffs' Claims

The lack of an injunctive remedy under § 1692f(6) is dispositive for the purposes of this motion. The Court notes that Plaintiffs face serious obstacles on the merits of proving a violation under the doctrine of res judicata, also known as claim preclusion. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* at 892 (quotation and citation omitted). Res judicata "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003). "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Id.*

The doctrine applies "when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Ruiz v. Snohomish Co. Pub. Utility Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (quotation and citation omitted).

7

####### a. Identity of Claims

To determine whether there is an identity of claims, courts examine four factors: "(1) whether the two suits arose out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (quotation and citation omitted). The "same transactional nucleus of facts" factor is most important. *Id. Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017). It rests on whether the two suits "are related to the same set of facts and whether they could conveniently be tried together." *ProShipLine Inc.*, 609 F.3d at 968. Importantly, the "identity of claims" element "does not mean that an imaginative attorney [or litigant] may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra*, 322 F.3d at 1077-78. Thus, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.*

Here, the factual theory of invalid title appears to be derivative of and to that extent identical to the claim asserted in the prior litigation against FNBN I, LLC. The facts underlying Plaintiffs' theory of invalid title here all relate to the October 2015 Assignment of Deed of Title and Substitution of Trustee.

####### b. Final Judgment on the Merits

The prior case also resulted in a final judgment on the merits. Judge Beeler dismissed Plaintiffs' FDCPA claims on the basis that FNBN was a "creditor" rather than a "debt collector" and therefore exempt under the FDCPA. Judge Beeler also held that Plaintiffs, as third-parties, lacked standing to pursue a claim alleging improper securitization as between MERS and FNBN. The failure to state a legal claim found by Judge Beeler constituted a resolution on the merits; it became final when Judge Beeler entered judgment.

####### c. Privity

Finally, there appears to be privity between FNBN (the defendant in the prior suit and the

8

prior beneficiary of the loan) and Defendants Fay (the loan servicer) and Trustee Corps (the loan trustee) because they all share a substantial commonality of interests related to enforcement of the security interest in question. *See Janeece Fields v. Bank of New York Mellon*, No. 17-CV-00272-JST, 2017 WL 1549464, at *3 (N.D. Cal. May 1, 2017) (holding that successor servicer and trustee had privity to lender who was party in previous suit); *Amedee v. Citimortgage, Inc.*, No. 15-CV-03356-HSG, 2016 WL 1070657, at *5 (N.D. Cal. Mar. 18, 2016) (holding that loan servicing agent had privity with beneficiary of the loan who appointed it); *Sepehry-Fard v. Select Portfolio Servicing, Inc.*, No. 14-CV-05142-LHK, 2015 WL 1063070, at *5 (N.D. Cal. Mar. 10, 2015).

For the reasons above, it appears that Plaintiffs' Section 1692f(6) claim is likely foreclosed on the basis of res judicata. If so, then Plaintiffs would be foreclosed from pursuing it and accordingly would have no likelihood of success on the merits. This is a further reason why Plaintiffs are not entitled to a temporary restraining order under Section 1962f(6).

B. <u>California Homeowner's Bill of Rights Claim</u>

The California Homeowner's Bill of Rights authorizes injunctive relief to stop a planned foreclosure sale in certain express circumstances, not for all violations of the statute. *See Lucioni v. Bank of Am., N.A.*, 3 Cal.App.5th 150 (2016); *see also Tjaden v. HSBC Bank USA, Nat'l Assoc.*, 681 Fed.Appx. 641, 643-44 (9th Cir. 2017) (explaining that judicial intervention in the foreclosure process may interfere with the nonjudicial foreclosure scheme created by California's legislature).[3]

Plaintiffs here assert that Defendants have violated Section 2924.17, which provides that:

> (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

---

[3] The Notice of Default here was recorded on October 26, 2015, after the January 1, 2013 effective date of the California HBOR; therefore, the HBOR's injunctive relief provisions govern here. *Lucioni*, 3 Cal.App.5th at 158.

9

> (b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Cal. Civ. Code § 2924.17(a)-(b). The statute thus creates two requirements: first, that such documents, when filed or recorded, "be accurate and complete and supported by competent and reliable evidence;" and second, that before recording or filing such documents, the mortgage servicer "shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose." *Id.*

The HBOR authorizes courts to enter pre-foreclosure injunctions when "material violations" of this statute are proven, so relief is at least theoretically available here. *See* Cal. Civ. Code § 2924.12(a)(1). However, Plaintiffs are not likely to prove a material violation. In *Lucioni*, plaintiffs challenged the validity of the underlying section 2923.55 declaration filed with a notice of default and sought a pre-foreclosure injunction for a violation of Section 2924.17 on that basis. The California Court of Appeals clarified that Section 2924.17 does *not* "impose a pre-foreclosure duty on foreclosing entities to demonstrate that they have a right to foreclose." *Lucioni*, 3 Cal.App.5th at 162. The statute "do[es] not create a burden on the foreclosing party to prove anything in court, other than that the declaration required by section 2923.55, subdivision (c) [or whatever document is in dispute] was filed, and that necessary steps were taken before filing it." *Id.* at 163. Thus, when the disputed document has been filed with the court (demonstrating that it was in fact recorded), along with "the deed and its assignments that defendants rely upon to substantiate [their] right to foreclose," that is sufficient to "preclude injunctive relief for a violation of the requirements of sections 2924.17 and 2923.55." *Id.* That is because the purpose of Section 2924.17 is simply to ensure due diligence on the foreclosing parties' part, not to "create a right to litigate, preforeclosure, whether the foreclosing party's conclusion that it had the right to foreclose was *correct*." *Id.* (emphasis in original).[4]

---

[4] Compliance with this procedure "do[es] not immunize [the foreclosing actors] from a postforeclosure lawsuit [for damages]." *Id.* Thus, although Plaintiffs cannot enjoin the foreclosure sale, if Defendants' theory of ownership is incorrect, Plaintiffs may nevertheless be able to pursue an action for money damages.

10

Under *Lucioni*, then, Defendants' burden under § 2924.17 is simply to demonstrate that, in connection with the notice of default, a section 2923.55 declaration was recorded. The record conclusively establishes that PLS, the loan servicer at the time of the Notice of Default, recorded the requisite declaration with the notice. *See* Compl., Ex. F. The declaration stated that "[t]he mortgage servicer has contacted the Borrower pursuant to California civil Code § 2923.55(b)(2) to 'assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure.' Thirty (30) days, or more, have passed since the initial contact was made." *Id.* Moreover, both Plaintiffs and Defendants have provided copies of the deeds and assignments on which Defendants rely to establish their claim. Although Plaintiffs allege that the representations in the declaration are false and that the deeds and assignments are invalid, Defendants are not required, under *Lucioni*, to prove more to avoid injunctive relief under the statute. They need not prove their foreclosure theory is "correct," only that they complied with the statutory steps. *Lucioni*, 3 Cal.App.5th at 163. California law does not contemplate a mini-trial on the merits of the lender's right to foreclose prior to the non-judicial foreclosure.

Plaintiffs also allege that Defendant Fay "has failed to cont[act] them, failed to validate the debt, and continues to attempt to collect payment and enforce the security interest by taking a non-judicial action by scheduling foreclosure dates against their Property without proper Validation." Compl. at 9. Plaintiffs have not identified, however, any legal requirement under the HBOR that Defendant Fay itself must pursue such contacts with Plaintiffs. Further, PLS attested to doing so in its § 2923.55 declaration when the notice of default was filed in 2015, and Plaintiffs do not allege that PLS failed to do so. In any case, Defendant Fay presented evidence demonstrating that it has, in fact, contacted Plaintiffs regarding alternatives to foreclosure. *See* Fay Decl. ¶ 8 ("In September 1, 2017, Fay obtained servicing rights to the Loan that is the subject of this action. Fay also sent a letter to Plaintiffs indicating that they were now servicing the Loan."); *id.* ¶ 9 ("On September 11, 2017, Fay contacted Plaintiffs with regard to loan modification assistance."); *id.*, Ex. C (call logs showing record of contact with Plaintiffs by Fay, though lacking specific details regarding contents of conversation); *id.* ¶ 10 ("Plaintiffs have not and did not submit a loan modification application[.]"). At the hearing, Plaintiffs acknowledged that they received Fay's

11

phone call. It is thus far from clear that Plaintiffs can show that any violation of Section 2924.17, let alone a "material violation" as required for injunctive relief. *See Johnson v. PNC Mortgage*, Case No. C 14-02976 LB, 2014 WL 6629585, at *9 (N.D. Cal. Nov. 21, 2014) (a violation is "material" if it "affect[s] the [borrower's] payment obligations" or "affect[s] the attendant foreclosure rights").

Accordingly, Plaintiffs have not shown that they are likely to prevail under Section 2924.17.

C. California Civil Code Section 2934a(a)(1)(A)(C)

Plaintiffs also claim Defendants have no authority to foreclose because the October 2015 Substitution of Trustee—which purported to appoint Defendant Trustee Corps—was invalid. Section 2934a requires that the beneficiary in interest sign the Substitution of Trustee and, Plaintiffs maintain, the document was signed by FNBN I, whose interest in the loan Plaintiffs contest. There are a few problems with this claim, however. Most importantly, even if Plaintiffs are correct, they would not be entitled to pre-foreclosure injunctive relief because the HBOR does not specifically authorize such relief for violations of Section 2934a. *See Lucioni*, 3 Cal.App.5th at 158-60. Absent such specific authorization, injunctive relief is not available. Even if injunctive relief were available under the HBOR, Plaintiffs have not shown they are likely to prove a violation. The Substitution of Trustee, on its face, is signed by PennyMac Lender Services, acting as attorney-in-fact for FNBN I, LLC, the purported beneficiary. Further, to the extent Plaintiffs' claim is based on the allegation that FNBN I was not the legitimate beneficiary of the loan, that claim appears to be foreclosed on the basis of res judicata, as explained above. Accordingly, Plaintiffs are not likely to succeed in proving that Section 2934a entitles them to injunctive relief.

**IV. CONCLUSION**

For the reasons herein stated, Plaintiffs have failed to demonstrate a likelihood of prevailing under the Fair Debt Collection Practices Act or California's Homeowner's Bill of Rights. Accordingly, their ex parte application is **DENIED**.

This order disposes of Docket No. 5.

12

An Initial Case Management Conference is scheduled for 9:30 a.m., January 18, 2018. A Joint Case Management Conference Statement shall be filed by January 11, 2018.

**IT IS SO ORDERED**.

Dated: October 25, 2017

_____
EDWARD M. CHEN
United States District Judge